Mona BRONSON, et al., Plaintiffs,

v.

BOARD OF EDUCATION OF the CITY
SCHOOL DISTRICT OF the CITY OF
CINCINNATI, et al., Defendants.

Charles R. BEATY, II, Plaintiff,

v.

BOARD OF EDUCATION OF the
CINCINNATI PUBLIC SCHOOLS,
Defendant.

Nos. C–1–74–205, C–1–82–1545.

United States District Court,
S.D. Ohio, W.D.

Aug. 2, 1983.

Entry Clarifying Triable Issues
Oct. 21, 1983.

On Motion for Clarification and Stay
Oct. 21, 1983.

NAACP Litigation Office, Cincinnati, Ohio, Leonard D. Slutz, Wood, Lamping, Slutz & Reckman, Trudy D. Rauh, Nadine Allen, John Burlew, Cincinnati, Ohio, Richard Stein, Columbus, Ohio, James R. Hardiman, Cleveland, Ohio, for Bronson, et al., plaintiffs.

Robert W. Blackmore, Cincinnati, Ohio, for Beaty, plaintiff.

John A. Lloyd, Jr., Sally Conley Lux, Glen Weissenberger, Cincinnati, Ohio, for City of Cincinnati School Dist., defendant.

A. David Nichols, Metzger, Phillips & Nichols Co., LPA, Cincinnati, Ohio, Mark O'Neill, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for State of Ohio, Special Counsel to Atty. Gen., State of Ohio, represents State Bd. of Educ.

Gary E. Brown, Richard W. Ross, Asst. Attys. Gen., Columbus, Ohio, for William J. Brown, Atty. Gen., and James A. Rhodes, Governor, defendants.

James W. Farrell, Jr., Mark A. Vander Laan, Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, for Deer Park City School Dist., Madeira City School Dist., Mariemont City School Dist., North College Hill City School Dist., Norwood City School Dist., St. Bernard-Elmwood Place City School Dist., Reading Community City School Dist., defendants.

Bruce I. Petrie, Sr., John B. Pinney, Graydon, Head & Ritchey, Cincinnati, Ohio, for Indian Hill Exempted Village School Dist., defendant.

George E. Roberts, III, Ennis & Roberts, Cincinnati, Ohio, for Lockland City School Dist., defendant.

Michael E. Maundrell, Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, for Princeton City School Dist., defendant.

Lawrence McTurnan, McTurnan & Meyer, Indianapolis, Ind., for Finneytown Local School Dist., Forest Hills Local School Dist., Northwest Local School Dist., Three Rivers Local School Dist., Hamilton County School Dist., defendants.

Thomas I. Atkins, NAACP Sp. Contribution Fund, Brooklyn Heights, N.Y.,

John C. Elam, Suzanne K. Richards, Vorys, Sater, Seymour & Pease, Columbus,

Ohio, for Wyoming City School Dist., defendant.

James W. Harper, Asst. Pros. Atty., Cincinnati, Ohio, for Oak Hills Local City School Dist., defendant.

Arnold Morelli, Bauer, Morelli & Heyd, Cincinnati, Ohio, for Green-Hills Forest Park City School Dist., defendant.

William E. Santen, William B. Singer, Santen, Santen & Hughes Co., LPA, Cincinnati, Ohio, for Sycamore City School Dist., defendant.

DECISION AND ENTRY GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED TRIAL COMPLAINT SUBJECT TO PLAINTIFFS' REVISING THEIR AMENDED TRIAL COMPLAINT TO BE IN CONFORMITY WITH THIS DECISION AND ENTRY; PLAINTIFFS GRANTED TEN DAYS WITHIN WHICH TO FILE REVISED AMENDED TRIAL COMPLAINT

RICE, District Judge.

## I. *Introduction*

The captioned cause is before the Court upon Plaintiffs' motion seeking to file an amended trial complaint. The present action is a class action being brought to challenge what is alleged to be *de jure* racial segregation in the school systems in Cincinnati and in Hamilton County.

In determining whether Plaintiffs' motion should be granted, the Court must resolve the narrow issue of what the named Plaintiffs and the class they are presently certified to represent may legally (as opposed to factually) attempt to pursue as their cause, or causes, of action at the trial of this matter in view of the Sixth

Circuit decisions in *Deal*,[1] *Bronson*,[2] and *Bell*.[3] Whether Plaintiffs, as a practical matter, can prove at trial, or have garnered during the pretrial discovery stage, the requisite factual proof in support of their articulated legal theories is a separate and distinct inquiry not presently before the Court.

Over the past several years, the Plaintiffs have attempted on their own, and in response to the insistent urgings of the Defendants and the Court, to construct a complaint that clearly defines the permissible legal theories Plaintiffs intend to advance at trial against the various named Defendants. The Plaintiffs' most recent proposed amended trial complaint, which is presently before the Court for consideration, appeared to the Court, upon review, to suffer two major flaws. First, Plaintiffs, at least in part, seemed to be attempting to proceed on legal theories that could not be properly litigated in light of the *Deal*, *Bronson*, and *Bell* decisions. Second, Plaintiffs appeared to be attempting to represent a broader class of plaintiffs than that which they are presently certified to represent and were attempting to add the Cincinnati Branch of the NAACP as a named plaintiff without demonstrating how this association has standing to bring the present suit.

Troubled by Plaintiffs' seeming unwillingness to accept the limiting effects imposed on their claims by the composition of their class as certified and by the *Deal*, *Bronson*, and *Bell* decisions, the Court by way of a letter dated May 26, 1983, directed Plaintiffs to respond in writing and at an oral hearing, held on July 26, 1983, to specific inquiries concerning the apparent problems with their Proposed Amended Trial Complaint as presently drafted.

1. *Deal v. The Cincinnati Board of Education,* 244 F.Supp. 572 (S.D.Ohio, *aff'd,* 369 F.2d 55 (6th Cir.1966), *cert. denied,* 389 U.S. 847, 88 S.Ct. 39, 19 L.Ed.2d 114 (1967) (*Deal I*), *aff'd on other issues,* 419 F.2d 1387 (6th Cir.1969), *cert. denied,* 402 U.S. 962, 91 S.Ct. 1630, 29 L.Ed.2d 128 (1971) (*Deal II*).

2. *Bronson v. Board of Education of the City School District of the City of Cincinnati,* 525 F.2d

344 (6th Cir.1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1665, 48 L.Ed.2d 175 (1976), (*Bronson I*); *Bronson v. Board of Education of the City School District of the City of Cincinnati,* 687 F.2d 836 (6th Cir.1982) (*Bronson II*).

3. *Bell v. Board of Education,* 683 F.2d 963 (6th Cir.1982) (*Bell*).

Having carefully considered the arguments raised and authorities cited by all parties, the Court grants Plaintiffs' motion to file a revised amended trial complaint in a form substantially modified to be in conformity with this Decision and Entry.

To aid all parties in understanding what the Court finds to be the permissible theories Plaintiffs may advance in this action, the Court in this Decision and Entry will first set forth, as succinctly and clearly as possible, what it finds to be the proper interpretation of the constraints imposed by the *Deal, Bronson,* and *Bell* decisions. The Court will then set forth those legal theories and factual issues which these decisions *preclude* Plaintiffs from attempting to prove, and those legal theories and factual issues advanced by Plaintiffs that are *not* precluded by these decisions. Having identified which theories and issues are not precluded by *Deal, Bronson,* and *Bell,* the Court will then set forth for the parties *which* of these legal theories and factual issues the present Plaintiffs have standing to litigate as well as those for which the present Plaintiffs do not have standing to litigate. Incorporated in this discussion will, of course, be a clarification of *who* are in fact the Plaintiffs in this action at this time as well as a determination of whether the NAACP may be added as a named plaintiff. As a further aid to the parties, the Court in an Addendum to this opinion, will identify, on a paragraph-by-paragraph basis, which allegations in the Plaintiffs' Proposed Amended Trial Complaint must be revised, and, to the extent possible, what aspect(s) of each paragraph must be altered to be in conformity with this Decision and Entry.

## II. The Constraints Imposed by the *Deal, Bronson,* and *Bell* Decisions

### A. The Effect of *Deal* and *Bronson*

Another in depth review and analysis of the *Deal, Bronson,* and *Bell* decisions at this stage of the proceedings would be an unwelcomed and unnecessary redundancy. All that will be said concerning any of these decisions will be what the Court finds necessary to explain its reasoning in arriving at the conclusions herein.

The Plaintiffs in *Deal* sought to enjoin the Cincinnati Board of Education from operating an allegedly *de jure* racially segregated school system in the City of Cincinnati. However, the Plaintiffs were *unable* to establish that the named Defendants, those representing the interests of the Cincinnati Board of Education, had acted in a manner that had deprived the Plaintiffs of their "rights under the law or under the Constitution of the United States." *Deal v. Board of Education,* 244 F.Supp. at 582. In other words, the Cincinnati school system was found not to be *unlawfully* segregated as a result of any intentionally segregative actions[4] on the part of the Cincinnati Defendants, *i.e.,* the Cincinnati Defendants were found innocent of having acted with segregative intent with respect to the Cincinnati school system.

Subsequently, the present suit was filed and the Cincinnati School Board once again found itself named as a defendant in an action wherein it was being accused of having committed numerous acts of discrimination in the Cincinnati school system. Thus, the Cincinnati Defendants sought the protection afforded them by their prior vindication in *Deal* by moving for dismissal of the complaint in this matter. In considering an interlocutory appeal on the issue of the extent to which Plaintiffs' present cause of action was limited by the prior *Deal* decisions and the application of collateral estoppel, the Sixth Circuit in *Bronson I* held:

The district court's order [in *Deal*] forecloses the plaintiffs from showing that the defendants did, prior to July 26, 1965, act with a segregative intent or that the actions, inactions or policies of the Board

---

**4.** Use of the word "acts" or "actions" could also include in given circumstances the *failure* to act, when that failure to act was consciously taken with segregative intent. This footnote should be read in conjunction with the word "acts" or "actions" as used throughout this opinion.

prior to that date violated the constitutional rights of minority pupils or their parents. Those issues have been decided and under the issue preclusion application of collateral estoppel may not be reopened.

*Bronson v. Board of Education,* 525 F.2d, at 349.

■ Because all of the present Defendants in this action seek to protect or limit themselves, in some manner, from exposure to liability by virtue of the holdings in the *Deal* and *Bronson* decisions, the Court finds it necessary to reiterate briefly what has been said before about the doctrine of collateral estoppel. The doctrine of collateral estoppel only acts to prohibit the relitigation of issues *"actually litigated and determined* in the prior suit." *Cream Top Creamery v. Deal Milk Co.,* 383 F.2d 358, 362 (6th Cir.1967), *quoting, Lawlor v. National Screen Service,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955).

It matters not what *might* have been litigated and determined in the prior suit; such a theory having applicability only in consideration of the doctrine of res judicata. *See, Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1887); *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Nolan v. City of Owensboro,* 75 F.2d 375, 377 (6th Cir.1935). Only those matters that were in fact at issue *and* resolved are pertinent in the consideration of the principles of collateral estoppel. *Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1887).

With this standard in mind, the Court has once again reviewed the *Deal* decisions, along with the discussion of *Deal* as set forth in *Bronson I* and *II,* in order to determine what was in fact at issue and actually determined in the initial Cincinnati school desegregation suit.

Necessary to the determination in *Deal* that the Defendant, the Cincinnati Board of Education, had not violated the constitutional rights of the Plaintiffs, was the finding that the Cincinnati school system, *as it then existed,* had not been brought about or maintained or perpetuated by the Cincinnati Board of Education acting with segregative intent.

Neither the State nor the Suburban School Districts, which are named defendants in the present action, were named as defendants in the prior suit. Moreover, the *Deal* Court made clear that the only evidence admissible in that proceeding was that which tended toward establishing that the *Cincinnati Board of Education,* by having acted with segregative intent, was responsible for bringing about the then existing distribution of Black and White students in the Cincinnati school system. *Deal v. Board of Education,* 244 F.Supp. at 576–579. The conduct of other parties with respect to the Cincinnati school system was simply not before the *Deal* Court.

A finding, then, that the Cincinnati Defendants had not acted with segregative intent prior to July 26, 1965, the date the *Deal* decision was rendered, in no way *legally* precludes a subsequent determination that some other actor or actors, in a position to control or influence the course of events and evolution of the Cincinnati school system, acted with segregative intent in shaping the past and present racial composition of that school system.

■ The Court notes that the mere existence of an apparent racially imbalanced school system does not trigger the remedial powers of a court such that the court can order a particular defendant to alter the distribution of the Black and White students within that school system. Rather, the court must determine if that school system is *unlawfully* segregated (a dual system) by examining the conduct of the defendant before it to determine if *that* defendant acted with segregative intent in creating, maintaining and/or perpetuating the segregated school system which the plaintiffs seek to have altered. In other words, a racially segregated school system is not *ipso facto unlawfully* segregated unless responsible parties who are properly before the court have acted with segregative intent in creating, maintaining, and/or perpetuating the segregated nature of that

school system. Determining whether a school system is *de jure* segregated now, or at any time in the past, is thus a question inextricably intertwined with the mental state of each of the defendants properly before the court. A determination that a *particular* defendant did not purposefully try to segregate a school system in the past does not mean that *another* defendant, not before the court in that prior suit, did not act with segregative intent in bringing about the past and present racial mix or composition of that same school system.

■ What *Deal* determined, then, was that the Cincinnati school system as it existed as of July 26, 1965, was not the result of the Cincinnati School Board's having acted with segregative intent. As the State and Suburban Defendants presently before the Court were *not* parties to the prior suit, their responsibility or liability, if any, for the composition of the Cincinnati school system, as it existed at the date of the rendering of the *Deal* decision, could not have been, and was not, determined.

Had Cincinnati been found liable in *Deal* for having acted with segregative intent, the Plaintiffs in the present action could not now, in this subsequent suit, employ the doctrine of collateral estoppel offensively to render the State and Suburban Defendants likewise liable for any racial imbalance that existed in the Cincinnati school system as of July 26, 1965. Nor could Plaintiffs employ collateral estoppel to require the State and Suburban Defendants to share with Cincinnati the burden of carrying out any remedy the court may have found to be necessary in the prior suit. Conversely, the State and Suburban Defendants may not now seek the protection of the doctrine of collateral estoppel to shield them from potential liability in the present action, merely because the Cincinnati Defendants were found not to have acted with segregative intent as of the rendering of the decision in *Deal.* The exonerating effect of the *Deal* decision is no broader than would have been its liability creating effect.

All of the Defendants in this action have placed much emphasis on a sentence in the Sixth Circuit's opinion in *Bronson II* which they feel conclusively establishes that *none* of their conduct prior to July 26, 1965, with respect to the Cincinnati school system, may be subject to question in this suit. This sentence is as follows:

> The plaintiffs in this case may not reopen the issue of whether the Cincinnati school system was unlawfully segregated prior to July 26, 1965.

*Bronson v. Cincinnati Board of Education,* 687 F.2d at 843. This statement, however, cannot be taken out of the context of the entire opinion, nor given conclusive weight beyond that afforded by the doctrine of collateral estoppel.

The Sixth Circuit continues in that same paragraph to clarify its meaning by reiterating its holding in *Bronson I,* cited above, wherein it states, without question, that it was the issue of the segregative intent of the *Cincinnati School Board* that had been litigated and determined not to have existed. To read the *Bronson II* opinion as somehow having determined that the present Plaintiffs are precluded from attempting to prove that the State and/or Suburban Defendants acted with segregative intent with respect to the Cincinnati school system prior to July 26, 1965, would be to blend together, and thus obliterate the distinction between, the doctrines of collateral estoppel and res judicata. Such a holding would give res judicata effect to the prior *Deal* litigation, in which the State and Suburban Defendants, now seeking to claim the benefit of the decision in *Deal,* were neither parties to that earlier case, nor in privity with those who were parties. Moreover, such an expansive reading of *Bronson II* is simply not supported by the consistent analysis of the doctrine of collateral estoppel applied by the Sixth Circuit within the entire texts of the *Bronson I* and *II* decisions.

The Court concludes, therefore, that the liability of the State and/or any or all of the Suburban Defendants with respect to the Cincinnati school system as it existed

prior to July 26, 1965, is not precluded by the *Deal* decisions, nor by the Sixth Circuit's holdings in either *Bronson I* and *II.*

B. The Effect of *Bell*

■ The effect of the *Bell* decision on Plaintiffs' complaint is clearer and thus may be dealt with in a more summary fashion. In *Bell,* the Sixth Circuit unequivocally determined that school officials "otherwise innocent of segregative intent," could not be required to bear the burden and expense of integrating a school system whose segregated racial distribution was the result of other agencies, such as housing authorities, having acted independently with segregative intent in shaping the racial mix of the community. *Bell v. Board of Education,* 683 F.2d, *supra,* at 968.

Plaintiffs in their Proposed Amended Trial Complaint appear, nonetheless, to have made allegations that would seemingly seek to make the present Defendants liable for the separate and independent segregative acts of individuals and/or agencies which are not named defendants. At the hearing in this matter, however, the Plaintiffs conceded that they may only seek to impose liability on the named Defendants for acts involving other individuals or agencies, *if* they demonstrate that the named Defendants acted in concert with these non-joined parties. Such a theory would require that Plaintiffs to establish at trial that any, or all, of the named Defendants *themselves* acted with segregative intent in conjunction with non-joined parties in bringing about the racial composition of the challenged school systems. Liability stemming from proof of a nexus between the segregative acts of the named Defendants and other non-joined parties would not be precluded by *Bell* which only forbids requiring school officials to right the wrongs of other independent actors or agencies when the school officials themselves have not acted with segregative intent nor were in a position to control the actions of said actors or agencies.

The Court concludes, therefore, that *Bell* does not preclude proof tending to establish that any or all of the named Defendants in this case acted with segregative intent in concert with other non-joined parties or agencies in bringing about the racial composition of the challenged school systems.

III. Issues precluded by *Deal I* and *II, Bronson I* and *II,* and *Bell*

A. Based upon the analysis of the *Deal* and *Bronson* decisions set forth above, the Court concludes that:

1. Plaintiffs are *precluded* from attempting to prove that prior to July 26, 1965, the *Cincinnati Defendants* acted with segregative intent with respect to the Cincinnati School District.

2. Plaintiffs are also *precluded* from attempting to prove that as of 1954, the date of the rendering of the decision in *Brown v. Board of Education,* 347 U.S. 483 [74 S.Ct. 686, 98 L.Ed. 873] (1954), a dual school system existed in Cincinnati because of the prior segregative acts of the *Cincinnati Defendants* which triggered the *Cincinnati Defendants'* responsibility after 1954 to act affirmatively to eliminate the continuing consequences of their prior acts.

In other words, Plaintiffs cannot attempt to prove that the Cincinnati Defendants acted with segregative intent prior to July 26, 1965 (the date of the *Deal* decision) *or* that they failed to take affirmative steps to eliminate a dual system in Cincinnati prior to July 26, 1965.

3. Plaintiffs are also *precluded* from attempting to prove that the *Cincinnati Defendants* conspired with the State and/or any or all of the Suburban Defendants to create, maintain and/or perpetuate a *de jure* segregated school system in Cincinnati prior to July 26, 1965.

The above limitations on Plaintiffs' causes of action are compelled by the finding in *Deal,* and the collateral estoppel effect of the *Deal* decision as has been interpreted by the Sixth Circuit in *Bronson I* and *II,* to

wit: that the Cincinnati Defendants had not acted with segregative intent with respect to the Cincinnati school system prior to July 26, 1965.

B. Based upon the analysis of the *Bell* decision as set forth above, the Court concludes that:

1. Plaintiffs are *precluded* from attempting to prove that *other parties and/or agencies* not before the Court acted with segregative intent individually and/or independently from the named Defendants in creating a *de jure* segregated community and/or school system in Cincinnati and/or any or all of Hamilton County.

IV. Issues Not Precluded by *Deal I* and *II, Bronson I* and *II,* and *Bell*

A. Based upon the analysis of the *Deal* and *Bronson* decisions described above, the Court concludes that:

1. The *Deal* and *Bronson* decisions do *not* preclude Plaintiffs from attempting to prove that the *Cincinnati Defendants,* acting individually, jointly, singularly or collectively with the State and/or any or all of the Suburban Defendants, acted with segregative intent *after July 26, 1965,* in creating, maintaining, and/or perpetuating a *de jure* segregated school system *in Cincinnati.*

2. The *Deal* and *Bronson* decisions do *not* preclude Plaintiffs from attempting to prove that the *State* and/or any or all of the *Suburban Defendants,* acting individually, jointly, collectively or singularly, acted with segregative intent *prior to and/or after July 26, 1965,* in creating, maintaining, and/or perpetuating a dual school system *in Cincinnati.*

3. The *Deal* and *Bronson* decisions do *not* preclude Plaintiffs from attempting to prove that the *State* and/or any or all of the *Suburban Defendants,* acting individually, jointly, collectively or singularly, acted with segregative intent *prior to and/or*

*after July 26, 1965* in creating, maintaining, and/or perpetuating a county-wide dual school system *in Hamilton County.*

4. The *Deal* and *Bronson* decisions do *not* preclude Plaintiffs from attempting to prove that the *Cincinnati Defendants,* acting individually, jointly, singularly, or collectively with the State and/or any or all of the Suburban Defendants, acted with segregative intent *prior to and/or after* July 26, 1965, in creating, maintaining and/or perpetuating a county-wide *de jure* segregated school system in Hamilton County, but only *to the extent* that proof of a county-wide *de jure* system prior to July 26, 1965, does not depend upon Plaintiffs' attempting to establish that the Cincinnati Defendants acted with segregative intent with respect to the Cincinnati school system prior to July 26, 1965.

B. Based upon the analysis of the *Bell* decision as set forth above, the Court concludes that:

1. Plaintiffs are *not* precluded from attempting to prove that the *Cincinnati, State,* and/or any or all of the *Suburban Defendants* acted in concert with other non-joined actors and/or agencies in creating, maintaining and/or perpetuating a *county-wide de jure* segregated school system in *Hamilton County, prior to and/or after July 26, 1965,* but only *to the extent* proof of a county-wide *de jure* system does not depend upon Plaintiffs' attempting to establish that the *Cincinnati* Defendants acted with segregative intent with respect to the *Cincinnati* school system prior to July 26, 1965.

2. Plaintiffs are *not* precluded from attempting to prove that the *State* and/or any or all of the *Suburban Defendants* acted in concert with other non-joined individuals and/or agencies in creating, maintaining and/or perpetuating a *de jure* segre-

gated school system *in Cincinnati prior to and/or after July 26, 1965.*

3. Plaintiffs are *not* precluded from attempting to prove that the Cincinnati Defendants acted in concert with other non-joined actors or agencies in creating, maintaining, and/or perpetuating a *de jure* segregated school system in *Cincinnati after* July 26, 1965.

## V. *Limitations Imposed by the Certified Class and Named Plaintiffs*

Plaintiffs' Proposed Amended Trial Complaint contains allegations that the Cincinnati school system is *de jure* segregated and that the Defendants are responsible for what is also alleged to be a *de jure* segregated school system within the whole of Hamilton County, the alleged metropolitan dual school system.

 The only Plaintiffs currently named as parties in the present action are certain named students who were attending schools in the Cincinnati school system when this suit was filed and their parents. When Judge Porter certified the class that these Plaintiffs could represent, he found:

Plaintiffs herein represent a class consisting of all students presently attending or who will in the future attend schools in the public school system of the City of Cincinnati and the parents of such children.

*Opinion Re Class Certification*, July 18, 1978 (Porter, J.).

Plaintiffs, in their written and oral response to the Court's inquiries about their Proposed Amended Trial Complaint, argue that the scope of the class they represent should be redefined and broadened to include students who attend schools in all of Hamilton County. Without considering the merits of any of the arguments raised for or against broadening the represented class, the Court finds that regardless of whether the Plaintiffs' class should or could be expanded and the class recertified, such a motion has not been made and is not properly before the Court for determination. The Court, therefore, concludes that

it is without authority to reconsider or modify any of the determinations made by Judge Porter when he certified the present class in 1978, to wit:

The evidence in depositions presented at the class action hearing demonstrate that none of the Plaintiffs live in the suburban school districts, none have attempted to move into the suburban school districts and none have applied to get their children into the suburban schools. We think that Plaintiffs do not possess the same interest and suffer the same injury as the parents and children of the suburban school districts. To that extent, Plaintiffs are not "similarly situated" to the "suburban class" they purport to represent and therefore have no standing to raise the claims, if any, of parents and children of the suburban school districts. Our decision is therefore, to restrict Plaintiffs' class to children attending school in the Cincinnati city school district and the parents of such children.

"Opinion," July 18, 1978, at 5–6 (Porter, J.).

In an effort to broaden the population of individuals whose interests properly may be asserted in this action, the Plaintiffs in their Proposed Amended Trial Complaint have added the NAACP as a named Plaintiff suing, "on behalf of itself, its Cincinnati members and their children, and its other Hamilton County members and their children." (Proposed Amended Trial Complaint, ¶ 4(b)).

Whether the NAACP may be added as a Plaintiff in the present proceeding requires determination of the threshold question of whether the NAACP has the requisite standing to assert the claims being raised in this matter.

As discussed by the Supreme Court in *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975):

Even in the absence of injury to itself, an association may have standing solely as the representative of its members. *E.g., National Motor Freight Assn. v. United States*, 372 U.S. 246 [83 S.Ct. 688, 9 L.Ed.2d 709] (1963). The possibility of

such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy. *See, Sierra Club v. Morton,* 405 U.S. 727 [92 S.Ct. 1361, 31 L.Ed.2d 636] (1972). The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. *Id.* at 734–741 [92 S.Ct. at 1365–69]. So long as this can be established, and so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

*Id.* 422 U.S. at 511, 95 S.Ct. at 2211.

■ Thus, for an association to have the requisite standing to bring suit on behalf of its members, the following three requirements must be satisfied:

(a) its members would otherwise have standing to sue in their own right;

(b) the interests it seeks to protect are germane to the organization's purpose; and

(c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

■ At the outset, the Court notes that the NAACP is not asserting that the NAACP has suffered, or is in danger of suffering, some palpable injury to itself *as an organization* because of the alleged *de jure* segregated school systems in Cincinnati and/or Hamilton County. Thus, if the NAACP is found to have standing to be added as a Plaintiff in this matter, its standing must be based upon the fact that it is serving as a representative of its members. All of the three requirements of *Warth v. Seldin,* as discussed in *Hunt v.*

*Washington Apple,* both cited above, must, therefore, be met.

In considering the first requirement, the Court finds that the individual members of the NAACP would *not* otherwise have standing to bring the present suit in their own right, and as a result, the NAACP's bid to seek representational standing must fail. Standing requires that the harm asserted be more than "a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens ...." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), *citing, Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Ex parte Levitt,* 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937). In this case, there has been no showing that the NAACP members living in Cincinnati or in metropolitan Hamilton County have suffered any injury distinct from, or greater than, that suffered by any of the other residents in these same areas arising from the alleged discriminatory practices of the Defendants.

The Court does not dispute Plaintiffs' statement in its Proposed Amended Trial Complaint that the NAACP and its Cincinnati Branch members share in the generalized interest of having the "constitutional imperatives of *Brown*" carried out in the public schools of Ohio, including the Cincinnati metropolitan area. (Proposed Amended Trial Complaint, ¶ 4–b). However, such a generalized concern "shared in substantially equal measure by all or a large class of citizens" is simply insufficient to support a finding of standing to allege racial discrimination in the Cincinnati and/or Hamilton County school systems.

Plaintiffs have thus failed to demonstrate that the NAACP or its members have suffered and/or are in danger of suffering any distinct and palpable injury that distinguishes them from the population as a whole. Therefore, as the members of the NAACP would not have individual standing to bring the present suit, then neither does

the association of which they are members. The Court concludes, therefore, that Plaintiffs may not add the NAACP as a named party Plaintiff in the amended trial complaint that they file in conformity with this Decision and Entry.

What remains then, are the individual named Plaintiffs and the class they were certified to represent in Judge Porter's order cited above. Having thus clarified *who* are the Plaintiffs in the present action, the Court finds that the permissible legal theories and factual issues upon which Plaintiffs may proceed at trial must be further limited to what *these* Plaintiffs have the standing to allege.

A. Claims Present Plaintiffs May Pursue

The Court concludes that the present Plaintiffs have standing to pursue *only* the following causes of action, notwithstanding the Court's previous holding that other additional legal theories and factual issues are not *legally precluded* by the *Deal, Bronson,* and *Bell* precedents:

1. Plaintiffs may attempt to prove that the *State* and/or any or all of the *Suburban Defendants,* acting individually, jointly, collectively or singularly, acted with segregative intent *prior to and/or after July 26, 1965,* to create, maintain, and/or perpetuate a *de jure* segregated school system in *Cincinnati.*

2. Plaintiffs may attempt to prove that the *State* and/or any or all of the *Suburban Defendants,* acting individually, jointly, or collectively, acted with segregative intent *prior to and/or after July 26, 1965, in concert* with *non-party individuals and/or agencies* to create, maintain, and/or perpetuate a *de jure* segregated school system in *Cincinnati.*

3. Plaintiffs may attempt to prove that the *Cincinnati, State, and/or* any or all of the *Suburban Defendants,* acting individually, jointly, collectively, or singularly, acted with segregative intent *after 7/26/65* to create,

maintain, and/or perpetuate a *de jure* segregated school system in *Cincinnati.*

4. Plaintiffs may attempt to prove that the *Cincinnati, State,* and/or any or all of the *Suburban Defendants,* acting individually, jointly, or collectively, acted with segregative intent *after 7/26/65* in concert with non-party individuals and/or agencies to create, maintain, and/or perpetuate a *de jure* segregated school system in *Cincinnati.*

B. Claims Present Plaintiffs May Not Prove

The Court also finds that the Plaintiff class, as it is presently certified, does not have standing to assert, and Plaintiffs are thus presently precluded from attempting to litigate, the following legal theories and factual issues:

1. Plaintiffs may not attempt to prove the existence of or liability for a *county-wide/metropolitan de jure* segregated school system that encompasses any geographical area outside the city limits of the City of Cincinnati.

2. Plaintiffs may not attempt to prove the existence of or liability for any *intra*-suburban district *de jure* segregated school systems separate and apart from any intentionally segregative impact those systems had, or are having, on the creation, maintenance, and/or perpetuation of the alleged *de jure* segregated school system in the City of Cincinnati. In other words, the permissible theories, as outlined above, cannot be employed as a vehicle to prove that any one or more or all of the Suburban Districts are now or have been in the past unlawfully segregated as a result of any actions taken with segregative intent by their constituent school boards. As a result, the permissible theories, as outlined above, would not, therefore, enable this or any other court to order desegregation, upon a system-

wide basis, *within* a particular suburban school district. However, the permissible theories as outlined above, if factually proven by the Plaintiffs, would not preclude the possibility that any one or more or all of the Suburban School Defendants will have to participate in any remedy which the Court deems advisable as the result of any finding of liability on the above theories.

## VI. *Conclusion*

The Court grants the Plaintiffs' motion to file an amended trial complaint substantially modified to conform with this Decision and Entry by presenting only those factual issues and legal theories which fall within the parameters set forth above and identifying as Plaintiffs only those Plaintiffs found by the Court to be proper parties at this time. Plaintiffs are granted ten days within which to file this revised amended trial complaint in conformity with this Decision and Entry.

### ADDENDUM

### MODIFICATIONS NEEDED TO BE MADE IN PLAINTIFFS' PROPOSED AMENDED TRIAL COMPLAINT

*Introductory Statement*

¶ 1. Subpart (1), no changes necessary, except to the extent this paragraph seeks to establish that Plaintiffs will attempt to prove the existence of and State liability for a county-wide *de jure* segregated school system outside the City of Cincinnati.

Subpart (2). This paragraph must be revised to the extent it reflects that Plaintiffs will seek to establish, or presupposes, that the Cincinnati Defendants acted with segregative intent in creating, maintaining and/or perpetuating a *de jure* segregated school system in the City of Cincinnati, prior to 7/26/65, or failed to disestablish a *de jure* segregated school system in Cincinnati prior to 7/26/65.

¶ 2. This paragraph must be revised to the extent it reflects that Plaintiffs will attempt to establish the existence of and liability on the part of any or all of the named Defendants for an *area-wide* or *metropolitan de jure* segregated school system in Hamilton County.

This paragraph does *not* have to be revised to the extent this paragraph reflects that Plaintiffs will attempt to establish that the State and/or any or all of the Suburban Defendants acted with segregative intent prior to or after July 26, 1965, in creating, maintaining and/or perpetuating a *de jure* segregated school system in *Cincinnati* or in failing to disestablish a *de jure* segregated school system in *Cincinnati* when they were under an affirmative obligation to do so.

This paragraph must be revised to the extent this paragraph seeks to establish, or presupposes, that the *Cincinnati* Defendants acted with segregative intent in creating, maintaining, and/or perpetuating a *de jure* segregated school system in Cincinnati prior to 7/26/65, or failed to disestablish a *de jure* segregated school system in Cincinnati prior to 7/26/65.

This paragraph must be revised to the extent that this paragraph seeks to establish the existence of and liability for any *intra*-suburban district *de jure* segregated school systems separate and apart from any intentionally segregative impact those systems had, or are having, on the creation, maintenance, and/or perpetuation of the alleged *de jure* segregated school system in the City of Cincinnati. (*See*, Decision and Entry, ¶ V, B, 2 for further clarification).

¶ 3. No changes required.

¶ 4. Subsection (a) must be revised to reflect that Tony Fletcher, Chaunston Brown, Valerie Miller, Andre Thorns, and their parents were excluded as named Plaintiffs in Judge Porter's July 18, 1978, *Opinion Re Class Certification.*

Subsection (b), which purports to add the NAACP as a Party Plaintiff, must be eliminated.

¶ 5. To the extent that this paragraph reflects the intention of the Plaintiffs to rep-

resent a class broader than, or different from, that certified on July 18, 1978, this paragraph must be revised unless or until the Court, upon proper motion by Plaintiffs, determines that Plaintiffs may properly represent a broader or different class.

¶ 6. No changes required.

¶ 7. No changes required.

¶ 8. No changes required.

¶ 9. No changes required.

*Count I*

¶ 10. Paragraph must be modified to the extent any of the allegations tend toward establishing the existence of a county-wide metropolitan *de jure* segregated school system that encompasses any area outside the city limits of the City of Cincinnati.

Paragraph must be modified to the extent any of the allegations tend toward establishing the existence of and liability for any intra-suburban district *de jure* segregated school systems separate and apart from any intentionally segregative impact those systems had, or are having, on the creation, maintenance and/or perpetuation of the alleged *de jure* segregated school system in the City of Cincinnati. (*See,* Decision and Entry, ¶ V, B, 2 for further clarification).

¶ 11. Same comment as for ¶ 10.

¶ 12. Same comment as for ¶ 10. In addition, paragraph must be modified to the extent the phrase, "local school authorities herein sued," is intended to refer to any purportedly racially segregative conduct of the Cincinnati Defendants at any time prior to 7/26/65.

¶ 13. Same comment as for ¶ 10. This paragraph must also be revised to the extent this paragraph seeks to establish, or presupposes, that the *Cincinnati* Defendants acted with segregative intent in creating, maintaining and/or perpetuating a *de jure* segregated school system in Cincinnati prior to 7/26/65, or failed to disestablish a *de jure* segregated school system in Cincinnati prior to 7/26/65.

Paragraph must also be modified to the extent it seeks to impose liability on any or all of the named Defendants for the independent segregative conduct of other non-party actors or agencies.

¶ 14. Same comment as for ¶ 10. Paragraph must also be modified to the extent that it seeks to impose liability on any or all of the named Defendants for the independent segregative conduct of other non-party actors or agencies.

¶ 15. Same comment as for ¶ 10.

¶ 16. Paragraph must be modified to the extent it seeks to establish, or presupposes, that the Cincinnati Defendants acted with segregative intent in creating, maintaining and/or perpetuating a *de jure* segregated school system in Cincinnati prior to 7/26/65, or failed to establish a *de jure* segregated school system in Cincinnati prior to 7/26/65.

¶ 17. Same comment as for ¶ 16.

¶ 18. Same comment as for ¶ 10.

¶ 19. Same comment as for ¶ 10.

¶ 20. Same comment as for ¶ 10.

¶ 21. Same comment as for ¶ 16.

¶ 22. Same comment as for ¶ 16.

¶ 23. Same comment as for ¶ 16.

¶ 24. No changes required *to the extent* that this paragraph seeks to establish that the Cincinnati Defendants acted with segregative intent *after* 7/26/65.

¶ 25. Same comment as for ¶ 24.

¶ 26. Same comment as for ¶ 24.

¶ 27. Same comment as for ¶ 24.

¶ 28. Same comment as for ¶ 24.

¶ 29. Same comment as for ¶ 24.

¶ 30. Same comment as for ¶ 24.

¶ 31. Same comment as for ¶ 24.

¶ 32. No changes required.

¶ 33. Same comment as for ¶ 24.

¶ 34. Same comment as for ¶ 24.

¶ 35. Same comment as for ¶ 24.

¶ 36. Subpart (1) no changes necessary, except to the extent this paragraph seeks to establish that Plaintiffs will attempt to

prove the existence of and State liability for a county-wide *de jure* segregated school system outside of the City of Cincinnati.

Subpart (2). This paragraph must be revised to the extent it reflects that Plaintiffs will seek to establish, or presupposes, that the Cincinnati Defendants acted with segregative intent in creating, maintaining and/or perpetuating a *de jure* segregated school system in the City of Cincinnati, prior to 7/26/65, or failed to disestablish a *de jure* segregated school system in Cincinnati prior to 7/26/65.

### Count II

¶ 37. This paragraph must be revised to the extent it reflects that Plaintiffs will attempt to establish the existence of and liability on the part of any or all of the named Defendants for an *area-wide* or *metropolitan de jure* segregated school system in Hamilton County.

This paragraph does *not* have to be revised to the extent this paragraph reflects that Plaintiffs will attempt to establish that the State and/or any or all of the Suburban Defendants acted with segregative intent prior to and/or after July 26, 1965, in creating, maintaining and/or perpetuating a *de jure* segregated school system in *Cincinnati* or in failing to disestablish a *de jure* segregated school system in *Cincinnati* when they were under an affirmative obligation to do so.

This paragraph must be revised to the extent this paragraph seeks to establish, or presupposes, that the *Cincinnati* Defendants acted with segregative intent in creating, maintaining, and/or perpetuating a *de jure* segregated school system in Cincinnati prior to 7/26/65, or failed to disestablish a *de jure* segregated school system in Cincinnati prior to 7/26/65.

This paragraph must also be revised to the extent that this paragraph seeks to establish the existence of and liability for any *intra*-suburban district *de jure* segregated school systems separate and apart from any intentionally segregative impact those systems had, or are having, on the creation, maintenance, and/or perpetuation

of the alleged *de jure* segregated school system in the City of Cincinnati. Paragraph must also be modified to the extent that it seeks to impose liability on any or all of the named Defendants for the independent segregative conduct of other non-party actors or agencies.

¶ 38. Same comment as for ¶ 37.

¶ 39. Same comment as for ¶ 37.

¶ 40. Same comment as for ¶ 37.

¶ 41. Same comment as for ¶ 37.

¶ 42. Same comment as for ¶ 37.

¶ 43. Same comment as for ¶ 37.

¶ 44. Same comment as for ¶ 37.

### Causes of Action

¶ 45. This paragraph must be revised to the extent it purports to claim that Plaintiffs have been deprived of their federal constitutional and statutory rights, privileges and immunities because of the alleged existence of county-wide metropolitan *de jure* school system.

### Prayer for Relief

¶ 46. This paragraph must be revised to the extent it purports to claim that Plaintiffs are entitled to intra-suburban district relief. (*See*, Decision and Entry, ¶ V, B, 2 for further clarification).

## ENTRY CLARIFYING TRIABLE ISSUES

The Court has reviewed the Plaintiffs' Revised Trial Complaint filed on August 9, 1983, pursuant to this Court's Decision and Entry of August 2, 1983, clarifying the permissible legal theories upon which Plaintiffs may attempt to establish the liability of the various Defendants for the present racial composition of the Cincinnati School System. The Court finds that although Plaintiffs have in some respects revised their complaint in conformity with the Court's August 2, 1983, Decision and Entry, the complaint continues to be laden with allegations that are premised upon theories of liability that simply cannot be tried in this case.

The Court in its August 2nd Decision and Entry commented on a paragraph-by-para-

graph basis on the manner in which Plaintiffs' complaint would have to be revised to be within the permissible legal boundaries established by the *Deal*,[1] *Bronson*,[2] and *Bell*[3] decisions. Repeating this exercise with further instructions to Plaintiffs might result in a complaint more closely adhering to the directives of the Court, but the Court has determined in view of the proximity of the January 10, 1984, trial date, that it would be more expeditious and fairer to all parties involved in this litigation to simply summarize, as concisely as possible, what Plaintiffs may attempt to prove at trial, notwithstanding the seemingly broader claims contained in their Revised Trial Complaint filed on August 9, 1983.

To begin with, based upon the Plaintiffs' class as it is presently certified, the Plaintiffs may only address the condition of the Cincinnati School System. That is, with respect to any or all of the Defendants, Plaintiffs may only attempt to establish their responsibility and legal liability for the racial composition of the *Cincinnati* schools. Thus, references throughout the complaint to the alleged existence of a *de jure* segregated school system that encompasses all of Hamilton County or the Cincinnati "metropolitan area", go beyond the scope of the permissible area and system under review *to the extent* such references focus on an area outside the Cincinnati School System boundaries.

Turning to the State Defendants, the Court has accepted that Plaintiffs are not legally precluded from attempting to establish that the State Defendants have acted with segregative intent in creating, maintaining and/or perpetuating a *de jure* segregated Cincinnati School System prior to and/or after July 26, 1965. Plaintiffs, however, may not attempt to base the alleged liability of the State Defendants upon the ground that the State Defendants failed to act or to intervene despite their awareness of intentional segregative conduct on the part of the Cincinnati Defendants prior to July 26, 1965. The Court recognizes that in both *Reed v. Rhodes* and *Penick v. Columbus Board of Education*, the respective courts based the State Defendants' liability in large measure upon the findings tending to establish non-action by the State Defendants in the face of known or apparent segregative conduct on the part of local school officials. *See, Reed v. Rhodes*, 500 F.Supp. 404 (N.D.Ohio 1980), *aff'd*, 662 F.2d 1219 (6th Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 135 (1982); *Penick v. Board of Education*, 519 F.Supp. 925 (S.D.Ohio 1981), *aff'd*, 663 F.2d 24 (6th Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 135 (1982). Pursuing a similar avenue of proof in the present controversy has, however, been severely limited by the *Deal* decision. As explained in the August 2nd Decision and Entry, the *Deal* decision precludes Plaintiffs from attempting to predicate the State Defendants' liability for the racial composition of the Cincinnati School System upon any alleged failure of the State Defendants to undo or to intervene or in any way to respond to the purportedly intentional segregative conduct of the Cincinnati Defendants prior to July 26, 1965. As the Cincinnati Defendants have been judicially determined not to have acted with segregative intent prior to July 26, 1965, State liability simply cannot be founded upon any grounds that presume the converse, *i.e.*, that the Cincinnati Defendants *did act* with segregative intent prior to July 26, 1965. No legal theory of State liability may be propounded at the trial which presumes or

---

**1.** *Deal v. The Cincinnati Board of Education*, 244 F.Supp. 572 (S.D.Ohio, *aff'd*, 369 F.2d 55 (6th Cir.1966), *cert. denied*, 389 U.S. 847, 88 S.Ct. 39, 19 L.Ed.2d 114 (1967) (*Deal I*), *aff'd on other issues*, 419 F.2d 1387 (6th Cir.1969), *cert. denied*, 402 U.S. 962, 91 S.Ct. 1630, 29 L.Ed.2d 128 (1971) (*Deal II*).

**2.** *Bronson v. Board of Education of the City School District of the City of Cincinnati*, 525 F.2d 344 (6th Cir.1975), *cert. denied*, 425 U.S. 934, 96 S.Ct. 1665, 48 L.Ed.2d 175 (1976), (*Bronson I*); *Bronson v. Board of Education of the City School District of the City of Cincinnati*, 687 F.2d 836 (6th Cir.1982) (*Bronson II*).

**3.** *Bell v. Board of Education*, 683 F.2d 963 (6th Cir.1982) (*Bell*).

is in any way premised upon the Cincinnati Defendants having acted with segregative intent or having failed to take action when they were under an affirmative obligation to do so at any time prior to July 26, 1965.

Similarly, in attempting to establish the liability of any or all of the Suburban Defendants, Plaintiffs are in the first place limited to attempting to establish that any one or all of these Defendants acted with segregative intent with respect to the Cincinnati School System. What these Defendants may or may not have done within their respective school systems or among their school systems has no relevance to the present proceeding, unless such conduct tends toward establishing that any one or all of the Suburban Defendants acted with segregative intent in shaping the racial composition and distribution in the *Cincinnati* School System. Moreover, as with the State Defendants, Plaintiffs may not attempt to base the alleged liability of the Suburban Defendants upon any theory which presupposes or presumes that the Cincinnati Defendants acted with segregative intent or failed to act when they were under an affirmative obligation to do so with respect to the Cincinnati School System at any time prior to July 26, 1965.

Though it should be self-evident from the foregoing, the Court also feels compelled to reiterate that the Plaintiffs are foreclosed from attempting to establish that the Cincinnati Defendants acted with segregative intent with respect to the Cincinnati School System or failed to act when they were under an affirmative obligation to do so at any time prior to July 26, 1965.

Finally, the Court stresses that none of the present Defendants can be held legally responsible for the *independent* segregative conduct of other actors or agencies not parties to this suit. Unless Plaintiffs are able to demonstrate a sufficient nexus between the acts of others not named as parties in this case with the acts of any or all of the named Defendants, proof that these other actors or agencies acted with segregative intent in shaping the racial composition and distribution of Cincinnati and its schools has no bearing on the legal responsibility of the named Defendants.

In summary, the Court finds that the Plaintiffs' Revised Trial Complaint, filed on August 9, 1983, does not appear to conform to all of the limitations on Plaintiffs' cause of action detailed in this Court's Decision and Entry filed on August 2, 1983. The parties are advised, however, that notwithstanding Plaintiffs' apparent continued assertion of theories of liability foreclosed by the Sixth Circuit's rulings in the *Deal, Bronson,* and *Bell* decisions, this Court will require Plaintiffs at trial to proceed only upon those legal theories which the Court finds to be proper in light of these prior rulings.

## ON MOTION FOR CERTIFICATION AND STAY

Having reviewed the arguments of the parties both for and against the Cincinnati Defendants' Motion for Certification of the Court's Order of August 2, 1983, pursuant to 28 U.S.C. § 1292(b), the Court denies the motion because, though the "Order involves a controlling question of law as to which there is a substantial ground for difference of opinion," in this Court's opinion, an immediate appeal from this Order would *not* "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).